Brown, District Judge.
The above libel was filed by the insurers of a part of the cargo on board the steamship City of Para, which stranded on a reef about 1½ miles off the southwesterly point of Old Providence island, at 10:24 p. M. of May 17, 1888, while on a voyage from Aspinwall to New York. Having paid the loss, the libelant sued the respondent, as master of the steamship, on the ground that the stranding was caused by the master’s neglect to take proper precautions to keep away from that dangerous coast. The question of negligence in navigation was among the issues presented to this court upon the trial of the petition of the Pacific Mail Steamship Company, as owners of the steamer, for a limitation of their liability to cargo owners in respect to this stranding. On that trial the present defendant was a witness for the petitioners to *153 disprove negligence; but the court found that there was negligence in the navigation of the ship in not bearing away sufficiently to port when the island was made a half point on the steamer’s port bow; and in not verifying, by simple and easy methods of observation and calculation, the actual distance of the island, which was much less than the master supposed; and because the master relied upon his mere estimate and judgment of his position instead of verifying it by such calculations and observations as would quickly have shown him the truth. The City of Para, 44 Fed. Rep. 689.
Upon the hearing of the present case the facts proved are substantially the same as before; except that it does not appear that at 5 p. m., before the stranding, the position of the steamer was accurately ascertained. The master now testifies, on the contrary, that he had not obtained any accurate observation since the previous noon. The additional testimony taken in behalf of the respondent shows in general the dangerous nature of the coast; that a prudent navigator, in going on the westward side of Old Providence island in the night-time, would intend to give it a berth of about six miles, which the respondent testifies he also intended; that the haziness of the atmosphere at that time made the estimate of the distance of land deceptive; that the currents of that region, depending upon the strength of the wind, usually run about north or northwest, varying from half a. knot to two knots, or sometimes even more; and that up to the line of the coral reefs the water is so deep as to make soundings for the most part impracticable.
Upon the additional testimony, I cannot find that the aspect of the case is substantially changed from that presented on the former hearing. The master is not, indeed, to be held for error or mistake in the exercise of his best judgment in the midst of uncertainties which there are no means of correcting by observation. But when approaching a dangerous coast at night, in uncertain currents and in a deceptive atmosphere, it is the master’s duty to make use at the first opportunity of all the means provided for correcting by observation the errors of dead reckoning. It is for the omission to make use of these means, and for this alone, that I am constrained to hold the master answerable.
At 9:45 p. m. the southwestern point of the island was made half a point on the steamer’s port bow, and was seen to stretch away like a black mass across to starboard. Reckoning according to the supposed speed of his ship from the position made by observation the previous-noon, the master estimated his distance to be 12 miles from the island. He went to his cabin to prick out his position on the chart, and at 10* o’clock changed his course 1½ points to port, namely, from N. by W. ¼ W. to N. W. by N. ¼ N. The captain stated that he estimated his speed at about 9 knots; but in order to reach his supposed position 12 miles distant from the island from his position of the previous noon, (deducting a stop of three fourths of an hour,) he must, in fact, have counted upon a speed of about 9f knots, including, as he says, one half knot for his estimate of the current, all sails being also set. Ten minutes afterwards a further change of three fourths of a point was *154 made to port, i. e., to N. W. ½ N. In 10 minutes afterwards the bows of the vessel struck on a coral reef in less than four fathoms of water, at a point l½ miles W. S. W. from shore. During the 89 minutes after the land was reported one half of a point off the port bow, no observation was made with the alidade to determine the distance, and the speed of the ship was kept unchanged.
1. I do not ascribe any fault or neglect to the master in estimating his distance from the island to be 12 miles at the time when the land was reported one half a point on his port bow. But if there was any call to prick his position upon the chart, as he testifies he immediately did, it was certainly his duty also to observe the course which, upon his own assumption of a distance of 12 miles, would be necessary in order to carry him at a reasonably safe distance, namely, 6 miles from the coast, as he says he intended; and that would have required, at the supposed distance of 12 miles, that his course should have been changed to N. W. ¼ N.; that is, 3¼ points to port, instead of 1¾ points. Had he made such a change at that time, he would in fact, although but half the distance from the land that he supposed, have just cleared the reefs. Had the,change of If points been made when the land was reported, instead of 15 minutes afterwards, and had he been 12 miles distant, that change even at that distance, according to my plotting of the navigation, would have carried him only 2¾ miles from land, instead of & miles; and the subsequent additional change of three fourths of a point would not have been sufficient to carry him even 3 miles away from the land. Upon the master’s own estimate of his position, therefore, the courses which he took were not sufficient, even had they been taken at once, to-carry him half the distance from the shore that he now says he intended. This mistake could only have arisen from great inattention to the chart, or entire neglect to ascertain from it his proper course.
2. I think there was an equal neglect of duty in not making observations by the alidade to verify his actual position. The ship was provided with this instrument, and by the use of it the bearings of the point of the.island on the port or starboard bow at different times could have been quickly taken, and with all the accuracy necessary for practical purposes. It is stated in general terms for the defense, that the western end of the island did not afford a sufficiently precise object for such observations. I cannot give any weight to this excuse. The western end was sufficiently marked to enable its bearing on the port bow to be determined, namely, half a point. Observations with the alidade would have shown the rapid change in its bearing at short intervals. The tables prepared for giving the distance upon any two of such observations enabled the approximate distance to be obtained very quickly. Even at the supposed distance of 12 miles, when the land was reported a half point on the port bow, it was the master’s duty to port at least two points, for a glance at the chart would show that, that was necessary to .clear the reefs. Observations with the alidademade five minutes apart would have shown such a change in the angle of the bearing of the head of land seen, as to indicate that its distance- *155 was only about one half what was supposed. There was time for several such observations. All would have repeated the same warning, and shown the necessity of a much greater change of course to port.
I must hold the master remiss in his duty, both for not taking a course more to port, which a proper consultation of his chart would have shown to be necessary on his own estimate of his position, and also for not correcting his erroneous estimate of position by obsefvations with the alidade. For losses resulting from such neglect, either to ship or cargo, the master is directly responsible to the persons injured; and to the libelant by subrogation, on its payment of the insurance. Story, Ag. §§ 314, 315.
Decree for the libelant, with costs.